UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELIYAMMA JOSE, | 19 Civ. 4583 (MKB) (ST) |
| Plaintiff, | |
| -against- | ANSWER WITH AFFIRMATIVE DEFENSES |
| CHINNAMMA JOSHUA, JACOB JOSHUA, PHILIP JOSHUA, ASHA JOSHUA, FINNEY JOSHUA, BEENA JOSHUA, BINNY KOSHY, and BETSY KOSHY, | |
| Defendants. | |

Defendants CHINNAMMA JOSHUA, JACOB JOSHUA, PHILIP JOSHUA, ASHA JOSHUA, FINNEY JOSHUA, BEENA JOSHUA, BINNY KOSHY, and BETSY KOSHY, by their attorneys, The McKew Law Firm, PLLC and Mintz & Gold LLP, for their answer to the Complaint filed August 8, 2019 (the "Complaint"), allege as follows:

1.      Admit that Ms. Jose actively sought from India her employment by Chinnamma Joshua in the U.S., that Ms. Jose willingly, voluntarily, and without coercion traveled alone to the U.S., that Ms. Jose happily resided without coercion with Chinnamma Joshua and Jacob Joshua and then Binny Koshy and Betsy Koshy, that Ms. Jose was loved and treated with respect by all Defendants and their children, that before and during her time in the U.S., Ms. Jose expressed that she wanted to live in the U.S., that she enjoyed her lifestyle and the people in the U.S., the family members she lived with,  and she did not want to return to India, that Ms. Jose wanted a  "green card" so she could lawfully and permanently remain in the U.S., that Ms. Jose asked Chinnamma Joshua and Binny Koshy to hold her passport for safekeeping, that Ms. Jose always had her Indian identification card, that she always had access to her passport, that at most relevant times she had a copy of her passport and after 2015 her actual passport in her possession, that an expired passport would be valid for her travel to India, and otherwise deny the allegations contained in paragraph 1

of the Complaint.

2.      Admit that Ms. Jose was employed and paid by Chinnamma Joshua and Jacob Joshua from on or about May 24, 2009 through on or about October 31, 2010 and by Binny Koshy and Betsy Koshy from on or about November 1, 2010 to on or about August 9, 2018, that during these periods, Ms. Jose received without charge *inter alia* meals, lodging, clothing, personal and hygienic necessities, domestic and international calls, medical, ophthalmological, and dental care, and prescription and over-the-counter medicine, that Ms. Jose regularly attended her church services on Saturdays, Sundays and holidays without any supervision, that Ms. Jose arranged her own work schedule of more than 2.5 hours and less than 5 hours a weekday, that Ms. Jose communicated almost daily with her family and others by telephone, Whatsapp, Skype, and Facetime, that Ms. Jose relaxed or slept in the afternoons and frequently took afternoon and evening walks in the neighborhood by herself or with Chinnamma, that Ms. Jose always had her Indian identification card, that Ms. Jose had access to her passport at all times, and that Ms. Jose was free to leave the Defendants' homes and the U.S. at all times, and otherwise deny the allegations contained in paragraph 2 of the Complaint.

3.      Admit that special agents from the Federal Bureau of Investigation ("FBI") visited and interviewed Ms. Jose in 2013 at the Koshys' home, 2015 at Finney Joshua's and Beena Joshua's home, and on August 9, 2018 at the Koshys' home, and that on the latter date Ms. Jose departed with the special agents, and otherwise deny the allegations contained in paragraph 3 of the Complaint.

4.      Respond that the allegation of paragraph 4 constitutes a legal conclusion as to which no response is necessary and in any event deny that legal conclusion.

5.      Deny the allegations contained in paragraph 5 of the Complaint.

6.      Admit the allegations contained in paragraph 6 of the Complaint.

7.      Deny knowledge or information sufficient to form a belief with regard to the truth of the allegations contained in paragraph 7 of the Complaint.

8.      Admit that defendants Chinnamma Joshua and Jacob Joshua are married, that they reside in Roslyn Heights, New York, and that Ms. Jose was employed and paid as a household employee by Defendants Chinnamma Joshua and Jacob Joshua from on or about May 24, 2009 through on or about October 31, 2010, and otherwise deny the allegations contained in paragraph 8 of the Complaint.

9.      Admit that Philip Joshua is the son of Chinnamma Joshua and Jacob Joshua, that Philip Joshua is married to Asha Joshua, that Philip Joshua and Asha Joshua have three children, that they reside with Chinnamma Joshua and Jacob Joshua in Roslyn Heights, New York, and otherwise deny the allegations contained in paragraph 9 of the Complaint.

10.     Admit that Betsy Koshy is the daughter of Chinnamma Joshua and Jacob Joshua, that Betsy Koshy is married to Binny Koshy, that they have three children and reside in Albertson, New York, that Ms. Jose was employed and paid as a household employee by Binny Koshy and Betsy Koshy from on or about November 1, 2010 to on or about August 9, 2018, and otherwise deny the allegations contained in paragraph 10 of the Complaint.

11.     Admit that Finney Joshua is the son of Chinnamma Joshua and Jacob Joshua, that Finney Joshua is married to Beena Joshua, that they have two children and reside in Roslyn, New York, and otherwise deny the allegations contained in paragraph 11 of the Complaint.

12.     Deny knowledge or information sufficient to form a belief with regard to the truth of the allegations contained in paragraph 12 of the Complaint.

13.     Deny the allegations contained in paragraph 13 of the Complaint.

14.     Deny knowledge or information sufficient to form a belief with regard to the truth of the allegations contained in paragraph 14 of the Complaint.

15.    Deny the allegations contained in paragraph 15 of the Complaint.

16.    Admit that Ms. Jose traveled to New York from India on May 24, 2009, and otherwise deny the allegations contained in paragraph 16 of the Complaint.

17.    Admit that on May 24, 2009 Ms. Jose was picked up at John F. Kennedy Airport and driven to the home occupied by Chinnamma Joshua and Jacob Joshua and Philip Joshua and Asha Joshua and their three children, and otherwise deny the allegations contained in paragraph 17 of the Complaint.

18.    Deny the allegations contained in paragraph 18 of the Complaint.

19.    Admit that Ms. Jose was employed by Chinnamma Joshua and Jacob Joshua from on or about May 24, 2009 through on or about October 31, 2010 as a paid household employee in a residence not owned by them, and otherwise deny the allegations contained in paragraph 19 of the Complaint.

20.    Admit that from on or about May 24, 2009 through on or about October 31, 2010 Ms. Jose voluntarily began her days at about 7:30 a.m. with prayer and tea followed by having breakfast at the kitchen island with Chinnamma Joshua and Jacob Joshua, and otherwise deny the allegations contained in paragraph 20 of the Complaint.

21.    Admit that from on or about May 24, 2009 through on or about October 31, 2010 members of the Chinnamma Joshua's and Jacob Joshua's household including Ms. Jose cooked certain meals in a separate and fully outfitted kitchen built in space with heat that was originally the home's garage to prevent the children with multiple severe food allergies from suffering potentially fatal reactions to food being prepared, and otherwise deny the allegations contained in paragraph 21 of the Complaint.

22.    Admit that from on or about May 24, 2009 through on or about October 31, 2010 Ms. Jose and Chinnamma Joshua together prepared breakfast for Ms. Jose, Chinnamma Joshua,

and Jacob Joshua, that Asha Joshua prepared breakfast for herself, Philip Joshua and their three children, that Ms. Jose ate breakfast at the kitchen island with Chinnamma Joshua and Jacob Joshua, and otherwise deny the allegations contained in paragraph 22 of the Complaint.

23.     Admit that from on or about May 24, 2009 through on or about October 31, 2010, on two or three workweek days after breakfast Ms. Jose and Chinnamma Joshua and, at times, Jacob Joshua, would together prepare Indian lunch and dinner meals in advance for only Ms. Jose, Chinnamma Joshua and Jacob Joshua, that Asha Joshua would prepare all meals for herself, Philip Joshua, and her three children, that Ms. Jose never prepared food for Finney Joshua and Beena Joshua, and otherwise deny the allegations contained in paragraph 23 of the Complaint.

24.     Admit that from on or about May 24, 2009 through on or about October 31, 2010, household chores were the equal responsibility of all household members except Ms. Jose, and otherwise deny the allegations contained in paragraph 24 of the Complaint.

25.     Admit that from on or about May 24, 2009 through on or about October 31, 2010 Ms. Jose's afternoons were free to do as she pleased, that Ms. Jose relaxed or slept in the afternoons and frequently took afternoon and evening walks in the neighborhood by herself or with Chinnamma, and otherwise deny the allegations contained in paragraph 25 of the Complaint.

26.     Admit that from on or about May 24, 2009 through on or about October 31, 2010, on workweek evenings Ms. Jose reheated previously prepared meals for Chinnamma Joshua, Jacob Joshua, and herself except once a week when Beena Joshua would prepare and deliver home-made Indian dinners to her in-laws' residence and when the family brought home pizza or meals from Wendy's and when meals were provided by a caterer and when the family dined out, that all household members were responsible for loading the dishwasher which was run every day, that the floors were cleaned with a vacuum cleaner, broom or mop when needed and primarily by others and never by scrubbing on hands and knees, and otherwise deny the allegations contained in

paragraph 26 of the Complaint.

27.     Admit that from on or about May 24, 2009 through on or about October 31, 2010 Ms. Jose had full access and freedom to wash and shower herself each day and was provided with unrestricted use of toiletries, and otherwise deny the allegations contained in paragraph 27 of the Complaint.

28.     Admit that from on or about May 24, 2009 through on or about October 31, 2010 Ms. Jose slept in her own bedroom with a bed and closet but shared a full bathroom with the two youngest children of Philip Joshua and Asha Joshua, and otherwise deny the allegations contained in paragraph 28 of the Complaint.

29.     Admit that Ms. Jose was always enthusiastic, cheerful, well-rested, and thankful, and otherwise deny the allegations contained in paragraph 29 of the Complaint.

30.     Admit that from on or about May 24, 2009 through on or about October 31, 2010 in the summer Chinnamma Joshua enjoyed tending to her small family garden raising bean, okra, eggplant, cucumber, and  bitter gourd, many of which were in planting pots, that Ms. Jose enjoyed watching Chinnamma Joshua tending her garden and occasionally voluntarily assisted Chinnamma Joshua with watering and gathering vegetables, that a landscaper was employed to maintain the yard and garden, and otherwise deny the allegations contained in paragraph 30 of the Complaint.

31.     Admit that from on or about May 24, 2009 through on or about October 31, 2010 day laborers and not Ms. Jose were employed to shovel snow from the driveway and walkways, that the garage had heat, and otherwise deny the allegations contained in paragraph 31 of the Complaint.

32.     Admit that in or around late 2009 Ms. Jose, Chinnamma Joshua and other family members provided refreshments to builders renovating the home of Chinnamma Joshua, Jacob Joshua, Philip Joshua, and Asha Joshua, and their three children, admit that Chinnamma Joshua,

licensed by New York State as registered nurse for thirty years beginning in 1985 and working at a hospital in the neonatal intensive care unit ("NICU"), and in a house stocked with anti-bacterial medicinal remedies and Band-Aids knows that properly treating injuries should never involve the use of onions, and otherwise deny the allegations contained in paragraph 32 of the Complaint.

33.     Admit that from on or about May 24, 2009 through on or about August 8, 2018 Ms. Jose was driven to and from her preferred church by the Defendants or by Ms. Jose's friends from church for Saturday and Sunday services, special church meetings, retirements, birthday luncheons, and Christmas, Thanksgiving, and New Year's Eve fellowships, most morning and evening services each of the 40 days and 21 days of fasting and prayer services, that the church provided her with a headset that broadcast a Malayalam translation of the service, that she received pastoral visits at home from up to six pastors, and otherwise deny the allegations contained in paragraph 33 of the Complaint.

34.     Admit that Binny Koshy and Betsy Koshy did not need to hire Ms. Jose as a household employee, that for the benefit of their newborn child, Binny Koshy and Betsy Koshy wanted a household employee that spoke English, that Ms. Jose persuaded Binny Koshy and Betsy Koshy to house and employ her in their residence as a paid household worker all as a favor to facilitate Ms. Jose's application for a "green card," and, upon the advice of legal counsel, for Binny Koshy and Betsy Koshy to be Ms. Jose's sponsor of her "green card" application, and otherwise deny the allegations contained in paragraph 34 of the Complaint.

35.     Admit that from on or about November 1, 2010 to on or about August 9, 2018 Ms. Jose's alarm was set for 7:00 a.m. each day, that she usually arrived in the family room or kitchen at about 7:30 a.m.,  that she prepared one meal of Indian food only twice a week for herself and occasionally Binny Koshy, that Betsy Koshy prepared or arranged for the remaining meals for herself and the Koshys' two oldest children, that Ms. Jose would care for the youngest Koshy child

often with the assistance of Chinnamma Joshua, a NICU nurse, when Betsy Koshy was not on maternity leave or not home from her job as a school teacher after school, on holidays, and during the summer months, and when Chinnamma Joshua was not staying in the residence to care for the child during her first three weeks at home, and when the youngest child was not attending her daycare program beginning in August 2013, and when the youngest child was not attending kindergarten and not attending an afterschool program beginning in 2015, and when the family was not on vacation, that Ms. Jose would care for the youngest Koshy child often with the assistance of Chinnamma Joshua, that Ms. Jose cleaned her own laundry and sometimes the children's laundry, that the household cleaning was performed by a cleaning woman employed by the Koshys, that Ms. Jose picked up the youngest child from school one block away from the residence and only after September 2016 and only when it was not raining or snowing, and only when a family friend was not driving her home, that the Koshys' two oldest children attended school full time, that the Koshys' two oldest children were dropped off at school by Binny Koshy, that a woman was employed to pick up the Koshys' two oldest children from school and watch them after school until the year they began middle school, that after middle school the two oldest children, that Ms. Jose did not pick up the Koshys' two oldest children from school or their extracurricular activities, that the Koshys' two oldest children prepared their own weekday breakfasts, that in evenings Ms. Jose would assist  Betsy Koshy to warm up dinner and to clean the kitchen after dinner, that Ms. Jose would often took walks in the neighborhood by herself or with the family dog with whom she enjoyed walking, and otherwise deny the allegations contained in paragraph 35 of the Complaint.

36.    Admit that from on or about November 1, 2010 to on or about the summer of 2013, twice a week Ms. Jose was driven to the residence of Chinnamma Joshua and Jacob Joshua and Ms. Jose and Chinnamma Joshua and, at times, Jacob Joshua, together would spend no more than

three hours preparing Indian lunch and dinner meals in advance for only Ms. Jose, Chinnamma Joshua and Jacob Joshua, that Ms. Jose was paid for the services she provided to Chinnamma Joshua and Jacob Joshua during this time as she wanted to earn extra money, and otherwise deny the allegations contained in paragraph 36 of the Complaint.

37.     Admit that from on or about summer of 2013 to on or about August 9, 2018, Ms. Jose worked exclusively in the Koshys' home, and otherwise deny the allegations contained in paragraph 37 of the Complaint.

38.     Admit that Ms. Jose was loved and respected by all the Defendants and their children, that all the Defendants and their children treated Ms. Jose with the utmost respect and as a loved member of the extended family, that Ms. Jose was addressed by Chinnamma Joshua and Jacob Joshua as Eliyamma and all other Defendants and their children as "Aunty," and otherwise deny the allegations contained in paragraph 38 of the Complaint.

39.     Admit that Ms. Jose was employed by Binny Koshy and Betsy Koshy until on or about August 9, 2018, that law enforcement officers arrived at the Koshys' home in the summer of 2013, privately interviewed Ms. Jose, inspected her living arrangements, and Ms. Jose departed with the special agents, and otherwise deny the allegations contained in paragraph 39 of the Complaint.

40.     Deny the allegations contained in paragraph 40 of the Complaint.

41.     Admit that Binny Joshua and Betsy Koshy directly paid legal fees of up to $4,000 to a law firm to facilitate Ms. Jose's "green card" application, that Chinnamma Joshua paid Ms. Jose $1,655.00 representing the total amount Ms. Jose was underpaid over seventeen months because of an innocent miscalculation arising from the conversion of rupees to US dollars, and otherwise deny the allegations contained in paragraph 41 of the Complaint.

42.     Admit that from about February 2015 to about March 2016 Ms. Jose and the Koshy

family were guests in the home of Finney Joshua and Beena Joshua while construction was being performed on the Koshys' home, that there were two bedrooms in the finished basement and Ms. Jose solely occupied one and the other was occupied by Binny Koshy and Betsy Koshy, that Ms. Jose performed no services for Finney Joshua, Beena Joshua or their two children, that Ms. Jose prepared one meal of Indian food only twice a week for herself and occasionally Binny Koshy, that Betsy Koshy prepared or arranged meals for herself and the Koshys' two oldest children, that Ms. Jose would be with the household children when Finney Joshua, Beena Joshua, and Binny Koshy were at work, when Betsy Koshy was not home from her job as a school teacher after school, on holidays, and during the summer months, and when the youngest child was not attending kindergarten and not attending an afterschool program beginning in 2015, and when the family was not on vacation, that Ms. Jose cleaned her own laundry, that the household cleaning was performed by a cleaning woman, that the Koshys' two oldest children attended school full time, that the Koshys' two oldest children were dropped off at school by Binny Koshy, that a woman was employed to pick up the Koshys' two oldest children from school and watch them after school until the year they began middle school, that after middle school the two oldest children, that Ms. Jose did not pick up the Koshys' two oldest children from school or their extracurricular activities, that the Koshys' two oldest children prepared their own weekday breakfasts, that in evenings Ms. Jose would assist  Betsy Koshy to warm up dinner and to clean the kitchen after dinner, that Ms. Jose often took walks in the neighborhood by herself, with Chinnamma Joshua or with the family dog with whom she enjoyed walking, and otherwise deny the allegations contained in paragraph 42 of the Complaint.

43.     Admit that in 2015, special agents from the FBI and detectives from the Nassau County Police Department arrived at the home of Finney Joshua and Beena Joshua, privately interviewed Ms. Jose, inspected her living arrangements, informed Binny Koshy and Betsy Koshy

that they found no evidence of abuse or mistreatment of Ms. Jose, and then departed, and otherwise deny the allegations contained in paragraph 43 of the Complaint.

44.     Deny knowledge or information sufficient to form a belief with regard to the truth of the allegations contained in paragraph 44 of the Complaint.

45.     Admit that Ms. Jose was free to leave the households at any time, that Ms. Jose was happy with her life and work in the households, that Ms. Jose frequently took afternoon and evening walks in the neighborhood by herself, with Chinnamma Joshua or with the family dog with whom she enjoyed walking, that Ms. Jose communicated almost daily with her family and others by telephone, Whatsapp, Skype, or Facetime without limitation by the Defendants, that at the request of Ms. Jose, Chinnamma Joshua and then Binny Koshy safely stored her passport, that they had given her a copy of her passport upon her arrival with them, that she always had her Indian identification card, that she always had access to her passport, that in and after 2015, Ms. Jose had her passport in her possession, that Ms. Jose was driven to and from her preferred church by the Defendants or by Ms. Jose's friends from church to attend Saturday and Sunday services, special church meetings, retirements, birthday luncheons, and Christmas, Thanksgiving, and New Year's Eve fellowships, most morning and evening services each of the 40 days and 21 days of fasting and prayer services, Ms. Jose received pastoral visits at home from up to six pastors, and otherwise deny the allegations contained in paragraph 45 of the Complaint.

46.     Admit that Ms. Jose was free to leave the households at any time, that Ms. Jose frequently took afternoon and evening walks in the neighborhood by herself, Chinnamma Joshua or with the family dog with whom she enjoyed walking, that Ms. Jose was not licensed to drive, she did not know how to drive, and she did not express any interest in learning to drive or in learning the English language, that Ms. Jose always had her Indian identification card, Ms. Jose always had access to her passport which at her request was held by either Chinnamma Joshua or

Binny Koshy, that Ms. Jose had possession of her passport in and after 2015, than an expired passport would be valid for her travel to India, that Defendants offered to pay for a ticket to India for Ms. Jose but she declined the offers including the offer made after her father passed away in India, that Ms. Jose did not travel beyond Long Island, New York, at her own choosing, and otherwise deny the allegations contained in paragraph 46 of the Complaint.

47.     Admit that Ms. Jose did not perform household work for the Defendants or their children on weekends, that Ms. Jose attended Saturday and Sunday church services, special church meetings, retirements, birthday luncheons, and Christmas, Thanksgiving, and New Year's Eve fellowships, most morning and evening services each of the 40 days and 21 days of fasting and prayer services, that Ms. Jose enjoyed vacations when Defendants went on their vacations without her at least twice a year, and otherwise deny the allegations contained in paragraph 47 of the Complaint.

48.     Admit that Ms. Jose was free to leave the households at any time, that Ms. Jose refused to leave the Koshy household when there came a time she was asked to do so and refused to return India when offered a paid flight to India, that Ms. Jose frequently took afternoon and evening walks in the neighborhood by herself, Chinnamma Joshua or with the family dog with whom she enjoyed walking and she greeted neighbors, that Ms. Jose had unrestricted access to telephone, Whatsapp, Skype, or Facetime to communicate with her family and others without limitation by the Defendants, that Ms. Jose freely communicated friends and acquaintances at the church and outside of church without interference by Chinnamma Joshua or the other Defendants, that Ms. Jose was occasionally driven to and from church by her friends, that her church friends often transported items from the U.S. to gift to Ms. Jose's family in India, that Chinnamma Joshua sat next to Ms. Jose to assist with translations of the church service until translation headsets were made available to the Malayalam speaking congregants, and otherwise deny the allegations

contained in paragraph 48 of the Complaint.

49.     Deny the allegations contained in paragraph 49 of the Complaint.

50.     Deny the allegations contained in paragraph 50 of the Complaint.

51.     Admit that Chinnamma Joshua, a diabetic, twice suffered a vaso vagal attack and on one of those occasions she suffered bowel incontinence and upon regaining consciousness Chinnamma Joshua cleaned herself and the home with the help of family members and Ms. Jose, and otherwise deny the allegations contained in paragraph 51 of the Complaint.

52.     Admit that Ms. Jose was provided with prescription and over-the-counter medications for her diabetes, hypertension, and other illnesses as needed, medical, ophthalmological, and dental care including visits to Queens General Hospital, an urgent care center in Hicksville, New York, an ophthalmologist, and physical therapists and otherwise deny the allegations contained in paragraph 52 of the Complaint.

53.     Deny the allegations contained in paragraph 53 of the Complaint.

54.     Deny the allegations contained in paragraph 54 of the Complaint.

55.     Admit that Ms. Jose received from Defendants and their relatives and friends cash gifts for Mother's Day, her birthday, Christmas, and other occasions, that Ms. Jose had sufficient cash to make church offerings every week, that for Ms. Jose the Defendants frequently purchased new clothing and footwear appropriate for each season and traditional Indian attire, that the Defendants would send clothing and toys to Ms. Jose's children and grandchildren in India, and otherwise deny the allegations contained in paragraph 55 of the Complaint.

56.     Admit that Chinnamma Joshua or Binny Koshy transmitted Ms. Jose's earned wages to various accounts in India at the direction of Ms. Jose, that Ms. Jose often requested that her monthly wages be held and transmitted in bulk to avoid wire transfer fees for each payment, that Ms. Jose gave money to her friends in church to transport to India on her behalf, and otherwise

deny the allegations contained in paragraph 56 of the Complaint.

57.     Deny the allegations contained in paragraph 57 of the Complaint.

58.     Deny the allegations contained in paragraph 58 of the Complaint.

59.     Deny the allegations contained in paragraph 59 of the Complaint.

60.     Admit that Ms. Jose earned wages from January 1, 2018 to August 9, 2018 which were being held by Binny Koshy at the direction of Ms. Jose, that Ms. Jose unexpectedly departed with special agents from the FBI on August 9, 2018 and with the Koshy's iPad and house key without first providing Binny Koshy with payment instructions for transmittal of the earned wages, that Binny Koshy has not been subsequently contacted by Ms. Jose to provide him with payment instructions for transmittal of the earned wages, otherwise deny the allegations contained in paragraph 60 of the Complaint.

61.     Deny the allegations contained in paragraph 61 of the Complaint.

62.     Admit that Finney Joshua and Beena Joshua gifted $2,000 to Ms. Jose to be used towards the ministry work of her daughter's husband in India, and otherwise deny the allegations contained in paragraph 62 of the Complaint.

63.     Deny the allegations contained in paragraph 63 of the Complaint.

64.     Admit that Ms. Jose was provided with the immigration attorney's telephone number and address, that the "green card" application process was explained to Ms. Jose in detail in Malayalam, that Ms. Jose was unhappy and angry to learn that her "green card" application process would require a few more years than she thought it would require, that Ms. Jose was provided with copies of the correspondence between Asha Joshua, Binny Koshy and the immigration attorney, and otherwise deny the allegations contained in paragraph 64 of the Complaint.

65.     Deny the allegations contained in paragraph 65 of the Complaint.

66.     Admit that on August 9, 2018 special agents from the FBI arrived at the Koshy home, privately interviewed Ms. Jose and inspected her living arrangements, that for some time prior to the arrival of the agents the Koshy had asked Ms. Jose to either find other employment or return to India, that Ms. Jose did not want to leave the Koshy household because she said she like it there and did not want to go back to India, and that Ms. Jose departed with the special agents, and otherwise deny the allegations contained in paragraph 66 of the Complaint.

67.     Repeat and reallege each and every response to the allegations contained in paragraphs 1 to 66 of the Complaint as if set forth herein in response to the allegations contained in the paragraph 67 of the Complaint.

68.     Respond that the allegation of paragraph 68 constitutes a legal conclusion as to which no response is necessary and in any event deny that legal conclusion.

69.     Respectfully refer the Court to the referenced provision of the U.S. Constitution for a full and accurate statement of its contents.

70.     Respectfully refer the Court to the referenced statute for a full and accurate statement of its contents.

71.     Deny the allegations contained in paragraph 71 of the Complaint

72.     Deny the allegations contained in paragraph 72 of the Complaint and otherwise respectfully refer the Court to the referenced statute for a full and accurate statement of its contents.

73.     Deny the allegations contained in paragraph 73 of the Complaint.

74.     Deny the allegations contained in paragraph 74 of the Complaint.

75.     Respond that the allegation of paragraph 75 constitutes a legal conclusion as to which no response is necessary and in any event deny that legal conclusion.

76.     Deny the allegations contained in paragraph 76 of the Complaint.

77.     Deny the allegations contained in paragraph 77 of the Complaint.

78.    Repeat and reallege each and every response to the allegations contained in paragraphs 1 to 77 of the Complaint as if set forth herein in response to the allegations contained in the paragraph 78 of the Complaint.

79.    Admit the allegations contained in paragraph 79 of the Complaint.

80.    Deny the allegations contained in paragraph 80 of the Complaint.

81.    Deny the allegations contained in paragraph 81 of the Complaint.

82.    Deny the allegations contained in paragraph 82 of the Complaint.

83.    Deny the allegations contained in paragraph 83 of the Complaint.

84.    Admit the allegations contained in paragraph 84 of the Complaint.

85.    Deny the allegations contained in paragraph 85 of the Complaint.

86.    Respond that the allegation of paragraph 86 constitutes a legal conclusion as to which no response is necessary and in any event deny that legal conclusion.

87.    Deny the allegations contained in paragraph 87 of the Complaint.

88.    Deny the allegations contained in paragraph 88 of the Complaint.

89.    Repeat and reallege each and every response to the allegations contained in paragraphs 1 to 88 of the Complaint as if set forth herein in response to the allegations contained in the paragraph 89 of the Complaint.

90.    Admit that under 18 U.S.C. § 1590(a), it is unlawful to "knowingly recruit[], harbor[], transport[], provid[e], or obtain[] by any means, any person for labor or services in violation of this chapter…" and otherwise deny the allegations contained in paragraph 83 of the Complaint.

91.    Deny the allegations contained in paragraph 91 of the Complaint.

92.    Deny the allegations contained in paragraph 92 of the Complaint.

93.    Deny the allegations contained in paragraph 93 of the Complaint.

94.     Respond that the allegation of paragraph 94 constitutes a legal conclusion as to which no response is necessary and in any event deny that legal conclusion.

95.     Deny the allegations contained in paragraph 95 of the Complaint.

96.     Deny the allegations contained in paragraph 96 of the Complaint.

97.     Repeat and reallege each and every response to the allegations contained in paragraphs 1 to 96 of the Complaint as if set forth herein in response to the allegations contained in the paragraph 97 of the Complaint.

98.     Admit the allegations contained in paragraph 98 of the Complaint.

99.     Deny the allegations contained in paragraph 99 of the Complaint.

100.    Respond that the allegation of paragraph 94 constitutes a legal conclusion as to which no response is necessary and in any event deny that legal conclusion.

101.    Deny the allegations contained in paragraph 101 of the Complaint.

102.    Deny the allegations contained in paragraph 102 of the Complaint.

103.    Repeat and reallege each and every response to the allegations contained in paragraphs 1 to 102 of the Complaint as if set forth herein in response to the allegations contained in the paragraph 103 of the Complaint.

104.    Admit the allegations contained in paragraph 104 of the Complaint.

105.    Deny the allegations contained in paragraph 105 of the Complaint.

106.    Deny the allegations contained in paragraph 106 of the Complaint.

107.    Respond that the allegation of paragraph 107 constitutes a legal conclusion as to which no response is necessary and in any event deny that legal conclusion.

108.    Deny the allegations contained in paragraph 108 of the Complaint.

109.    Deny the allegations contained in paragraph 109 of the Complaint.

110.    Repeat and reallege each and every response to the allegations contained in

paragraphs 1 to 109 of the Complaint as if set forth herein in response to the allegations contained in the paragraph 110 of the Complaint.

111.    Admit the allegations contained in paragraph 111 of the Complaint.

112.    Deny the allegations contained in paragraph 112 of the Complaint.

113.    Deny the allegations contained in paragraph 113 of the Complaint.

114.    Deny the allegations contained in paragraph 114 of the Complaint.

115.    Deny the allegations contained in paragraph 115 of the Complaint.

116.    Deny the allegations contained in paragraph 116 of the Complaint.

117.    Deny the allegations contained in paragraph 117 of the Complaint.

118.    Repeat and reallege each and every response to the allegations contained in paragraphs 1 to 117 of the Complaint as if set forth herein in response to the allegations contained in the paragraph 118 of the Complaint.

119.    Deny the allegations contained in paragraph 119 of the Complaint.

120.    Deny the allegations contained in paragraph 120 of the Complaint.

121.    Deny the allegations contained in paragraph 121 of the Complaint.

122.    Repeat and reallege each and every response to the allegations contained in paragraphs 1 to 121 of the Complaint as if set forth herein in response to the allegations contained in the paragraph 122 of the Complaint.

123.    Deny the allegations contained in paragraph 123 of the Complaint.

124.    Deny the allegations contained in paragraph 124 of the Complaint.

125.    Deny the allegations contained in paragraph 125 of the Complaint.

126.    Repeat and reallege each and every response to the allegations contained in paragraphs 1 to 125 of the Complaint as if set forth herein in response to the allegations contained in the paragraph 126 of the Complaint.

127.    Admit the allegations contained in paragraph 127 of the Complaint.

128.    Deny the allegations contained in paragraph 128 of the Complaint.

129.    Deny the allegations contained in paragraph 129 of the Complaint.

130.    Deny the allegations contained in paragraph 130 of the Complaint.

131.    Repeat and reallege each and every response to the allegations contained in paragraphs 1 to 130 of the Complaint as if set forth herein in response to the allegations contained in the paragraph 131 of the Complaint.

132.    Admit the allegations contained in paragraph 132 of the Complaint[A1].

133.    Deny the allegations contained in paragraph 133 of the Complaint.

134.    Deny the allegations contained in paragraph 134 of the Complaint.

135.    Deny the allegations contained in paragraph 130 of the Complaint.

136.    Repeat and reallege each and every response to the allegations contained in paragraphs 1 to 135 of the Complaint as if set forth herein in response to the allegations contained in the paragraph 136 of the Complaint.

137.    Deny the allegations contained in paragraph 137 of the Complaint.

138.    Deny the allegations contained in paragraph 138 of the Complaint.

139.    Deny the allegations contained in paragraph 139 of the Complaint.

140.    Deny the allegations contained in paragraph 140 of the Complaint.

141.    Repeat and reallege each and every response to the allegations contained in paragraphs 1 to 140 of the Complaint as if set forth herein in response to the allegations contained in the paragraph 142 of the Complaint.

142.    Deny the allegations contained in paragraph 142 of the Complaint.

143.    Deny the allegations contained in paragraph 143 of the Complaint.

144.    Deny the allegations contained in paragraph 144 of the Complaint.

145.    Deny the allegations contained in paragraph 145 of the Complaint.

146.    Deny the allegations contained in paragraph 146 of the Complaint.

147.    Repeat and reallege each and every response to the allegations contained in paragraphs 1 to 146 of the Complaint as if set forth herein in response to the allegations contained in the paragraph 147 of the Complaint.

148.    Deny the allegations contained in paragraph 148 of the Complaint.

149.    Deny the allegations contained in paragraph 149 of the Complaint.

150.    Deny the allegations contained in paragraph 150 of the Complaint.

151.    Repeat and reallege each and every response to the allegations contained in paragraphs 1 to 150 of the Complaint as if set forth herein in response to the allegations contained in the paragraph 151 of the Complaint.

152.    Deny the allegations contained in paragraph 152 of the Complaint.

153.    Deny the allegations contained in paragraph 153 of the Complaint.

154.    Deny the allegations contained in paragraph 154 of the Complaint.

155.    Deny the allegations contained in paragraph 155 of the Complaint.

156.    Deny the allegations contained in paragraph 156 of the Complaint.

157.    Deny the allegations contained in paragraph 157 of the Complaint.

158.    Repeat and reallege each and every response to the allegations contained in paragraphs 1 to 157 of the Complaint as if set forth herein in response to the allegations contained in the paragraph 158 of the Complaint.

159.    Deny the allegations contained in paragraph 159 of the Complaint.

160.    Deny the allegations contained in paragraph 160 of the Complaint.

161.    Deny the allegations contained in paragraph 161 of the Complaint.

162.    Deny the allegations contained in paragraph 162 of the Complaint.

163.    Deny the allegations contained in paragraph 163 of the Complaint.

<u>AFFIRMATIVE DEFENSES</u>

164.    Ms. Jose willingly, voluntarily, and without coercion traveled alone to the U.S.  Ms. Jose happily resided without coercion with Chinnamma Joshua and Jacob Joshua and then Binny Koshy and Betsy Koshy.  Ms. Jose was loved and respected by all Defendants and their children. Ms. Jose expressed that she wanted to live in the U.S., that she liked living with the Defendants, and that she wanted a "green card" so she could lawfully and permanently remain in the U.S. Binny Koshy and Betsy Koshy paid a law firm to assist with a "green card" application for Ms. Jose and Ms. Jose was kept informed of the status of the application.  Ms. Jose asked Chinnamma Joshua and Binny Koshy to hold her passport for safekeeping but she always had access to her actual passport and at most relevant times she had a copy of her passport.  In and after 2015 she had her actual passport.  At all relevant times she had her Indian identification card.

165.    Ms. Jose was paid for the work she performed voluntarily and freely.  Ms. Jose was employed and paid by Chinnamma Joshua, Jacob Joshua, Binny Koshy, and Betsy Koshy from on or about May 24, 2009 to on or about August 9, 2018, and she also received without charge *inter alia* meals, lodging, clothing, personal and hygienic necessities, domestic and international calls, medical, ophthalmological, and dental care, and prescription and over-the-counter medicine.  Ms. Jose arranged her own work schedule of more than 2.5 hours and less than 5 hours on weekdays with no work performed on weekends.

166.    Ms. Jose was never confined to the Defendants' households and she was not surveilled.  Without supervision, Ms. Jose was driven to and from her preferred church by the Defendants or by Ms. Jose's friends from church for Saturday and Sunday services, special church meetings, retirements, birthday luncheons, and Christmas, Thanksgiving, and New Year's Eve fellowships, most morning and evening services each of the 40 days and 21 days of fasting and

prayer services, and she received pastoral visits at home from up to six pastors.  Ms. Jose communicated almost daily with her family and others by telephone, Whatsapp, Skype, and Facetime without limitation by the Defendants.  Ms. Jose relaxed or slept in the afternoons and frequently took afternoon and evening walks in the neighborhood by herself, with Chinnamma Joshua or with the family dog with whom she enjoyed walking.

167.    Ms. Jose was not a trafficking victim.  Upon information and belief, Ms. Jose only claimed victim status as a means of obtaining a special visa for herself and potentially certain of her family members to remain in the United States as she always wanted, to receive certain federal and state benefits, to be lawfully employed, and to qualify for a "green card" which Ms. Jose and the Defendants learned she would not obtain otherwise because she had illegally overstayed her tourist visa.  Ms. Jose never intended to return to India and reunite with her three daughters, brother, mother and, before his death, her father.

## FIRST AFFIRMATIVE DEFENSE

168.    The Complaint and each claim purported to be alleged therein, fails to state a claim against the Defendants upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

169.    Ms. Jose's claims are barred in whole or part as against the Defendants all of whom acted with reasonable grounds for believing that their alleged actions or omissions were not in violation of federal or New York State law and they acted in good faith by providing Ms. Jose with paid employment and providing her without charge *inter alia* meals, lodging, clothing, personal and hygienic necessities, domestic and international calls, medical, ophthalmological, and dental care, and prescription and over-the-counter medicine.  Ms. Jose's decision to apply for a "green card" was made after receiving the advice of legal counsel through others.

170.    Ms. Jose expressed that she wanted to live in the U.S. and she was happy with her

life and her work in the households, and that she had negotiated her wages.  She wanted a "green card" so she could lawfully and permanently remain in the U.S.  Acting in good faith, Binny Koshy and Betsy Koshy acquiesced to Ms. Jose's request to employ her in order to facilitate her "green card" application although she had been advised that an illegal immigrant could not get a "green card."  Acting in good faith, Chinnamma Joshua and Jacob Joshua paid Ms. Jose her wages as she instructed which included wire transfer of her wages to accounts overseas and Ms. Jose's request to transfer her wages only after they had sufficiently accumulated so as to reduce wire transfer fees which would otherwise occur for each transfer.  Ms. Jose did not want to pay a separate wire transfer fee each time she was paid for her work.

171.    Acting in good faith, Binny Koshy and Betsy Koshy paid a law firm up to $4,000 to assist with a "green card" application for Ms. Jose and Ms. Jose was kept informed of the status of the application.  Ms. Jose asked Chinnamma Joshua and Binny Koshy to hold her passport for safekeeping, and acting in good faith, Chinnamma Joshua and Binny Koshy did so, but she always had her Indian identification card and access to her actual passport and at most relevant times she had a copy of her passport and in and after 2015 she had her actual passport.

172.    Acting in good faith, Ms. Jose was provided with the immigration attorney's telephone number and address.  Ms. Jose's "green card" application process was explained to her in detail in Malayalam.  Ms. Jose was provided with copies of the correspondence between Asha Joshua, Binny Koshy and the immigration attorney.

173.    Acting in good faith, Finney Joshua and Beena Joshua gifted $2,000 to Ms. Jose to be used towards the ministry work of her daughter's husband in India, paid for the funeral in India of Ms. Jose's father which she declined to attend and paid for recording the funeral so Ms. Jose would watch it.

<u>THIRD AFFIRMATIVE DEFENSE</u>

174.     Ms. Jose's claims are barred in whole or part as against defendants Finney Joshua, Beena Joshua, Philip Joshua and Asha Joshua none of whom were Ms. Jose's "employer" under federal or New York State Law.

175.     Ms. Jose and the Koshy family were guests in the home of Finney Joshua and Beena Joshua while construction was being performed on the Koshys' home.  Ms. Jose performed no services for the benefit of Finney Joshua, Beena Joshua or their two children.

176.     Chinnamma Joshua and Jacob Joshua employed Ms. Jose in the home also occupied by Asha Joshua and Philip Joshua.  Ms. Jose performed no services for the benefit of Philip Joshua, Asha Joshua and their three children.

<u>FOURTH AFFIRMATIVE DEFENSE</u>

177.     One or more of the Defendants employed and housed Ms. Jose from May 24, 2009 to on or about August 9, 2018.  Ms. Jose's claims are barred in part or whole by applicable Federal and New York State statute of limitations.

<u>FIFTH AFFIRMATIVE DEFENSE</u>

178.     Ms. Jose's claims for punitive or liquidated damages are barred in whole or part on the ground that the Defendants did not willfully violate, as alleged, any federal or New York State labor laws.

<u>SIXTH AFFIRMATIVE DEFENSE</u>

179.     The Complaint fails to state a claim upon which relief consisting of compensatory or liquidated damages or any other damages, interests, costs, or fees allowed by applicable law may be granted.

<u>SEVENTH AFFIRMATIVE DEFENSE</u>

180.     Ms. Jose's claims are barred in whole or in part to the extent that some or all of the disputed time is not compensable pursuant to the provisions of the Portal-to-Portal Act of 1947

and/or New York law.

## EIGHTH AFFIRMATIVE DEFENSE

181.    Defendants assert all affirmative defenses provided by Section 195 of the New York Law and all statutory affirmative defenses to New York State record keeping requirements.

## NINTH AFFIRMATIVE DEFENSE

182.    Any and all wages owed to Ms. Jose have been paid in full.  Ms. Jose's claims are barred in whole or in part by payment.

## TENTH AFFIRMATIVE DEFENSE

183.    Ms. Jose was exempt from overtime pay under the live-in domestic service worker under federal and New York State law.

## ELEVENTH AFFIRMATIVE DEFENSE

184.    Ms. Jose is not entitled to any compensation for the time when she was not on duty.

## TWELFTH AFFIRMATIVE DEFENSE

185.    Defendants are entitled to a credit or setoff for the value of the meals, lodging, clothing, domestic and international calls, medical, ophthalmological, and dental careand other valuable compensation Ms. Jose received.    [A2]

## THIRTEENTH AFFIRMATIVE DEFENSE

186.    The Complaint, and each claim purported to be alleged therein, is barred in whole or in part, by the equitable doctrines of laches.

## FOURTEENTH AFFIRMATIVE DEFENSE

187.    The Court should not exercise supplemental jurisdiction over the counts in the Complaint that purport to arise under the New York State law.

## FIFTEENTHAFFIRMATIVE DEFENSE

188.    This Court lacks subject matter jurisdiction over the claims and/or personal jurisdiction over the Defendants.

WHEREFORE, defendants pray for dismissal of the Complaint, with prejudice, together with costs and disbursements of this action including reasonable attorneys' fees and such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
        October 18, 2019

MCKEW LAW FIRM, PLLC
*Attorneys for Defendants*


By:___/s/ Mark L. McKew___
        Mark L. McKew
1725 York Ave., Suite 29A
New York, NY 10128
Tel.: (212) 876-6783
Fax: (646) 478-9090
Email:  mmckew@mckewnylaw.com

MINTZ & GOLD LLP
Elliot G. Sagor, Esq.
600 Third Ave., 25th Fl.
New York, NY 10016
Email:  sagor@mintzandgold.com
Tel: (212) 696-4848
Fax: (347) 696-1231

TO:

GREENBERG TRAURIG, LLP (*via ECF*)
Alan Mansfield, Esq.
Daniel Friedman, Esq.
Noah Lindenfeld, Esq.
200 Park Avenue
New York, NY  10166
Tel: (212) 801 -9200
Fax: (212) 801-6400
mansfielda@gtlaw.com
friedmand@gtlaw.com
lindenfeldn@gtlaw.com
*Attorneys for Plaintiff*

THE LEGAL AID SOCIETY (*via ECF*)
Janet Sabel, Esq.
Young Lee, Esq.
Sumani Lanka, Esq.
199 Water St., 3rd Floor
New York, NY  10038
Tel: (212) 577-3300
Fax: (646) 616-9468
svlanka@legal-aid.org
*Attorneys for Plaintiff*